**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SUZANNE M. GILBREATH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV-11-1037-D |
| | ) | |
| CLEVELAND COUNTY BOARD OF | ) | |
| COUNTY COMMISSIONERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is the joint motion [Doc. No. 7] of Defendants Board of County
Commissioners of Cleveland County ("Board") and Joseph K. Lester ("Sheriff Lester") to dismiss
the Complaint for failure to state a claim upon which relief may be granted. Plaintiff timely
responded to the motion, and the movants filed a reply.

Background:

Plaintiff Suzanne M. Gilbreath ("Ms. Gilbreath") brings this action individually and in her
capacity as the appointed guardian of Lacee Danielle Marez, an incapacitated person ("Ms. Marez"),
seeking damages for the alleged violation of Ms. Marez's constitutional rights under the Fifth,
Eighth, and Fourteenth Amendments while Ms. Marez was confined at the Cleveland County
Detention Center ("Center"). Pursuant to 42 U. S. C. § 1983, Ms. Gilbreath alleges that several
detention officers and other Center employees[1] violated Ms. Marez's rights during her detention by

---

[1]The Complaint names as additional defendants Detention Specialists Brown, Calista
Harlow, and Kim Lopez, along with Deputy Hernandez, Deputy Jackson, and ten "John Doe"
defendants. Plaintiff alleges each was an officer or employee involved in the incidents on which the
claims are based. All are sued in both their individual and official capacities. Plaintiff has not yet
served these defendants with summons and the Complaint. Because service was not accomplished
within the 120 days required by the Federal Rules of Civil Procedure, the Court ordered Plaintiff to

inflicting physical injuries and, thereafter, denying her medical treatment.  She alleges that, as a result of the employees' actions or inactions, Ms. Marez suffered a heart attack which caused a coma and resulted in permanent brain damage.  Ms. Gilbreath also seeks to hold the Board and Sheriff Lester liable for the alleged constitutional violations.  In addition to the § 1983 claims, she asserts pendent state tort claims based on negligence.

The Board and Sheriff Lester seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing the Complaint fails to allege facts sufficient to state a plausible claim for relief against them.  With respect to the claims asserted against him in his individual capacity, Sheriff Lester also seeks dismissal based on qualified immunity from § 1983 liability.  The movants also argue the "John Doe" defendants should be dismissed.

In her response brief, Ms. Gilbreath argues she has alleged sufficient facts to withstand the motion to dismiss.  Alternatively, she asks the Court to authorize leave to amend if it finds the allegations deficient.  With regard to the "John Doe" defendants, however, Ms. Gilbreath concedes that their dismissal at this time is appropriate because she has been unable to ascertain their identities.  She states that, if they are identified during discovery, she will seek leave to amend to add them as defendants.

Motion to dismiss standards:

To avoid dismissal pursuant to  Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008); *VanZandt*

show cause why the claims against the unserved defendants should not be dismissed.  Plaintiff timely responded, and the Court will address this issue in a separate order.

*v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished opinion). To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt*, 276 F. App'x at 846 (quoting *Robbins*, 519 F. 3d at 1247.) "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U. S. at 555. Thus, plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570; *Robbins*, 519 F. 3d at 1247. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F. 3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthews v. LaBarge, Inc.,* 407 F. App'x. 277, 280 (10th Cir. 2011) (unpublished opinion) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* Although the Court must construe well-pleaded facts as true, not all allegations are "entitled to the assumption of truth," as the Court need not accept as true the assertions in a complaint which are merely conclusory legal contentions or those which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 554-555).

According to the Tenth Circuit, the *Twombly* plausibility requirements are particularly

important when a complaint alleges § 1983 claims.   *Robbins v. State*, 519 F. 3d 1242 (10th Cir. 2008).  In general, to state a claim for relief under § 1983, a plaintiff must plead facts to show  four elements: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of [law]." *Beedle v. Wilson,* 422 F.3d 1059, 1064 (10th Cir. 2005); *Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th  Cir.2002).

In § 1983 cases, specific factual allegations supporting these elements are particularly important because  "state actors may only be held liable under § 1983 for their *own* acts." *Robbins*, 519 F. 3d at 1251(emphasis added).  According to the Circuit:

> Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F. 3d at 1250 (emphasis in original). The plaintiffs in *Robbins* sued several defendants, alleging they collectively engaged in certain specific conduct which constituted a violation of the plaintiffs' rights.  According to the Circuit, the collective allegations were insufficient to withstand a Rule 12(b)(6) motion because the plaintiffs failed to identify the wrongful acts allegedly committed by each defendant.  As the Circuit explained:

> Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.

*Robbins*, 519 F. 3d at 1250.  Thus, the Circuit held that the allegations failed to satisfy both the *Twombly* plausibility requirements and the fair notice requirements of Fed. R. Civ. P. 8.  *Id.*  at 1250-51; *see also Bryson v. Gonzales*, 534 F.3d 1282, 1290 (10th Cir. 2008) .

4

The Tenth Circuit has also stressed the importance of factual allegations in a § 1983 claim when qualified immunity is likely to be asserted as an affirmative defense. *Robbins*, 519 F. 3d at 1249; *VanZandt*, 276 F. App'x at 847. As the Circuit explained in *VanZandt*:

> Although we apply the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally, complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. [citing *Robbins*, 519 F. 3d at 1249]. The *Twombly* standard has greater "bite" in these contexts, "reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest stage of a litigation.'" [citing *Robbins* at 1249 and omitting citations].

*VanZandt,* 276 F. App'x at 847.

Application:

The Complaint alleges that, on or about September 17, 2009, Ms. Marez was taken into custody by the Cleveland County Sheriff's office after she was two hours late for a court appearance related to criminal felony charges. She was detained at the Center. Complaint ¶¶ 9-10. Ms. Gilbreath, who is Ms. Marez's mother and was later appointed her guardian, alleges that several deputies or employees of the Center "choked Ms. Marez, threw her into the jail, and threw her down on the concrete floor with such excessive force that [Ms. Marez] struck her head causing a traumatic brain injury resulting in Ms. Marez going into a coma, suffering a heart attack, and remaining in a permanent vegetative state." Complaint at ¶ 10. Specifically, Ms. Gilbreath alleges that Defendants Detention Specialists Brown, Harlow, and Lopez took these actions, along with Defendant Deputy Hernandez, Defendant Deputy Jackson, and "John Doe." *Id.*

Plaintiff also alleges that, after this occurrence, Ms. Marez complained of "physical distress," requested medical treatment "on numerous occasions," and later "began vomiting, urinating on herself, and laying lethargic on her cell bed." Complaint at ¶ 11. Plaintiff alleges that Ms. Marez

5

and others made "repeated pleas" for medical assistance for three days, but she was denied medical treatment "as a result of deliberate indifference of the Defendants John Doe." *Id.* According to the Complaint, Ms. Marez suffered cardiac arrest on or about September 20, 2009, "and lay for twenty (20) minutes before emergency medical services arrived." Complaint at ¶ 12.

In support of her claim that the Board is liable for the foregoing conduct, Plaintiff alleges the Board is responsible for the policies, practices, and customs of the Sheriff's office and the Center as well as for hiring, training, supervising, and disciplining law enforcement officers and detention specialists. Complaint, ¶ 13. She further alleges that the Board and Sheriff Lester, as well as unidentified supervisory personnel, "failed to take the steps necessary to see that competent and properly trained individuals" were in charge of inmates at the Center and that the Board and unidentified supervisory personnel "failed to implement and enforce policies that would ensure that inmates with medical complaints would be properly treated." Id. at ¶¶ 14 and 15. She also alleges the Board failed to investigate "other incidents involving irregular practices regarding inmates," and such failures "were done on a repeated and constant basis and so condoned as to become in fact, the regular practices" of the Center. *Id.* at ¶ 15. Plaintiff also alleges the Board "adopted an attitude and instilled in its employees an attitude of supervisory indifference and actual indifference towards the recognition of serious medical needs of inmates," and the "supervision and observation of inmates" at the Center. Complaint at ¶ 17. Additionally, she alleges the Board and supervisory personnel "failed to appoint and hire qualified, competent personnel," failed to train jailers and other Center personnel to identify inmates with serious medical needs, and failed to properly monitor the medical needs of inmates. *Id.* at ¶¶ 18-19.

With regard to Sheriff Lester, Plaintiff adopts these same allegations. She further alleges

that his actions and omissions constitute negligence for which he is liable pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), as such actions and omissions were outside the scope of his immunity under the GTCA.  Complaint at ¶ 20.

Sufficiency of allegations to establish § 1983 liability:

To state a cognizable Eighth Amendment claim for denial of medical attention, a plaintiff must allege facts to show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The right to custodial medical care is clearly established. *Id.* at 104. Although "[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, ... this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir.1999).

As the Tenth Circuit has explained, "deliberate indifference" involves both an objective and a subjective component. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Sealock v. Colorado.*, 218 F.3d 1205, 1209 (10th Cir.2000)). "The former is met if the deprivation is 'sufficiently serious'—that is, 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999)). The subjective component of deliberate indifference is satisfied if a law enforcement officer "'knows of and disregards an excessive risk to [a detainee's] health or safety.'" *Sealock*, 218 F.3d at 1209. According to the Supreme Court, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments." *Id.* "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Liability of the Board:

It is well established that a political unit, including a municipality or county, cannot be held liable under § 1983 for the unconstitutional conduct of its employees under a theory of *respondeat superior. Monnell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978); *Brammer-Hoelter v. Twin Peaks Charter Academy,* 602 F. 3d 1175, 1188 (10th Cir. 2010). Instead, a political unit is liable under §1983 only where the employee's unconstitutional conduct occurred while he was carrying out a policy or custom established by the  political unit, and the county or municipality "will only be held liable for its own acts - acts it 'has officially sanctioned or ordered.'" *Brammer-Hoelter,* 602 F.3d at 1188 (quoting *Pembaur v. City of Cincinnati*, 475 U. S. 469, 480 (1986)). According to the Tenth Circuit:

> A municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff. Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged.

*Bryson v. City of Oklahoma City*, 627 F. 3d 784, 788 (10th Cir. 2010) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993) (citation omitted)). "Proving a single incident of unconstitutional conduct is not enough. Rather, a plaintiff must show that the incident resulted from an existing, unconstitutional policy attributable to a municipal policymaker." *Nielander v. Board*

*of County Comm'rs*, 582 F.3d 1155, 1170 (10th Cir. 2009) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

In this case, the Board and Sheriff Lester argue that the Complaint fails to allege that the asserted violations of Ms. Marez's rights resulted from actions taken pursuant to an official policy of the Board.  While the movants are correct that no written policy or procedure is identified or referenced in the Complaint, Plaintiff avers that the conduct toward Ms. Marez's and the alleged failures to provide inmates with care for serious medical needs was a widespread practice at the Center and that the actions or omissions of the Center employees occurred so frequently "as to become in fact, the regular practices of the Cleveland County Detention Center." Complaint at ¶ 15.

The Tenth Circuit has held that the policy or custom requirement for municipal liability under § 1983 is not limited to formal regulations or policy statements, but may take several forms. Specifically, the policy may be based on "an informal custom 'amoun[ting] to a widespread practice that, although not authorized by written law or express...policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Bryson*, 627 F. 3d at 788 (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad*emy, 602 F.3d 1175, 1189-90 (10th Cir.2010)); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

The Tenth Circuit has not expressly determined the extent of factual allegations required to support a claim of liability based on a widespread custom that is alleged to constitute a policy for § 1983 purposes.  However, the Circuit has held that, to satisfy *Twombly's* plausibility requirements, a complaint need not recite "'detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level.'" *Matthews v. LaBarge, Inc.,* 407 F. App'x. 277, 280 (10th Cir. 2011) (unpublished opinion) (quoting *Hall v. Witteman*, 584 F.3d 859, 863 (10th

Cir.2009) (internal quotation marks omitted)).   As the Tenth Circuit explained:

> As we observed in *Robbins*, "plausibility" in the context of determining the sufficiency of a complaint "refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " 519 F.3d at 1247 ( quoting *Twombly*, 127 S.Ct. at 1974). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

*Christensen v. Park City Municipal Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).   Applying this analysis to a claim seeking to hold a municipality liable under § 1983, the Circuit held the allegation that conduct was taken pursuant to purportedly unconstitutional city ordinances was factually sufficient to state a plausible claim for relief.   *Id.* at 1279.   The opinion does not suggest that the plaintiff identified specific ordinances, and it found the general reference to ordinances sufficient to state a claim against the municipality based on an official policy, custom or practice.   *Id.*

Plaintiff's allegations in paragraph 15 of the Complaint, although arguably stated in conclusory form, assert that Center employees so frequently ignored detainees' serious medical needs that their conduct became a regular practice.   The Court finds these allegations sufficient to allege a Board policy  that is "so permanent and well settled as to constitute a custom or usage with the force of law," one of the bases recognized by *Bryson* as comprising a policy sufficient for potential § 1983 liability of a political unit.   Whether Plaintiff can establish evidence sufficient to support this basis for liability is not properly before the Court at this time because the Rule 12(b)(6) motion challenges only the sufficiency of the allegations, not whether she can prove those allegations.   The motion to dismiss on this basis is denied.

Plaintiff also alleges that the Board failed to ensure the proper training of the Center

employees responsible for the medical needs of detainees. The Supreme Court has recognized failure to train as a potential means of establishing a policy or custom for § 1983 liability. *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). However, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* "It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

Consistent with *City of Canton*, the Tenth Circuit acknowledges that one of the bases for establishing a policy for purposes of § 1983 liability is the "'failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.'" *Bryson,* 627 F.3d at 788 (quoting *Brammer-Hoelter,* 602 F.3d at 1189-90). In *Bryson,* the Circuit explained the requirements for establishing deliberate indifference for this purpose:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional

11

violations.

*Bryson*, 627 F. 3d at 789 (citing *Barney v. Pulsipher*, 143 F. 3d 1299, 1307-08 (10th Cir. 1998)).

According to the Supreme Court, a political unit's § 1983 liability for failure to train cannot be based on a contention that an officer or employee negligently carried out his duties. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. "It may be, for example, that an otherwise sound program has occasionally been negligently administered." *Id.* The Court added:

> Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*City of Canton,* 489 U.S. at 391.

In this case, the Complaint alleges that the Board and Sheriff Lester failed to hire competent jail employees and failed to train them to recognize and respond to the serious medical needs of inmates and detainees at the Center. "Mere conclusory allegations that an officer or group of officers are unsatisfactorily trained will not 'suffice to fasten liability on the city.'" *Bark v. Chacon*, 2011 WL 1884691, at *3 (10th Cir. May 18, 2011) (unpublished opinion) (quoting *City of Canton*, 489 U.S. at 390-91). Where a complaint does "'nothing more than recite the required causal elements of custom or policy liability based on deliberate indifference,'" it is insufficient to state a plausible claim for § 1983 relief against the political unit. *Id.* (quoting *Martin v. District of Columbia,* 720 F.Supp.2d 19, 23 (D. D.C. 2010)).

In this case, the allegations in the Complaint that the Board failed to train or supervise employees are conclusory recitations of the elements required to establish § 1983 liability.  The Court finds the lack of specific factual allegations to support this theory of recovery render the Complaint subject to dismissal for failure to state a plausible claim for relief against the Board on this basis.

§ 1983 liability of Sheriff Lester:

Sheriff Lester is sued in both his official and individual capacities.  It is well settled that a § 1983 claim against a state actor in his official capacity is "essentially another way of pleading an action against the county or municipality."  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). Thus, the sufficiency of the allegations against Sheriff Lester in his official capacity is  subject to the same analysis as applicable to the Board.  *Id.* (citing *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010)).  Accordingly, the Court reaches the same conclusion regarding the sufficiency of the allegations against Sheriff Lester in his official capacity, and  the motion is denied to the extent it seeks dismissal of the claim based on an unconstitutional policy or practice and granted to the extent it is based on inadequate training of the employees whose conduct allegedly violated Ms. Marez's rights.

With respect to the § 1983 allegations against Sheriff Lester in his individual capacity, he contends that the Complaint fails to state a claim for relief against him or, alternatively, that he is entitled to qualified immunity from § 1983 liability.

To state a § 1983 claim against an individual state actor, a plaintiff must plead facts sufficient to show the individual's personal participation in the alleged constitutional deprivation, as  "state actors may only be held liable under § 1983 for their *own* acts."  *Robbins*, 519 F. 3d at 1251.

(emphasis added).  "[I]n order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation of a constitutional right must be established."  *Porro*, 624 F.3d at 1327 (emphasis in original) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)).

In this case, the Complaint does not allege that Sheriff Lester personally participated in the conduct which allegedly violated Ms. Marez's rights.  In fact, the allegations do not even suggest that he was personally aware of any incident or occurrence during her detention.  The Complaint fails to state a claim for relief against him in his individual capacity because there are no facts to show that Sheriff Lester participated in the conduct at issue.

The same conclusion is reached even if the Complaint is construed as seeking to hold him individually liable as a supervisor of the employees who allegedly committed the violations.  To state a claim against a supervisor for the alleged unconstitutional conduct of the employees he supervises, a plaintiff must allege facts to show 1) the supervisor "promulgated or was responsible for a policy that (2) caused the constitutional harm and (3) acted with the state of mind required to establish the alleged constitutional deprivation."  *Brown v. Montoya*, 662 F.3d 1152, 1165-66 (10th Cir. 2011). Where a pretrial detainee alleges unconstitutional excessive force resulting in injury, "the focus must always be on the *defendant*–on the force *he* used or caused to be used, on the injury *he* inflicted or caused to be inflicted, and on *his* motives."  *Porro v. Barnes,* 624 F.3d 1322, 1327 (10th Cir. 2010) (emphasis in original).  "This is because § 1983 isn't a strict liability offense." *Id.* at 1326.  To state a claim for § 1983 relief against a supervisor, it is not sufficient to allege facts to show a defendant held a supervisory position or to identify his job duties and responsibilities.  To establish a violation of § 1983 by a supervisor, a plaintiff must plead facts that, if proved, would

"establish a deliberate, intentional act" on the part of the supervisor to violate the plaintiff's rights. *Porro,* 624 F.3d at 1327-28 (citing *Serna v. Colorado Dep't. of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006)).   The Tenth Circuit has expressly held that, where a plaintiff "sued several officers in their supervisory roles, reciting their titles and official duties without alleging specific wrongdoing," the "claims failed as a matter of law, because under 42 U.S.C. § 1983, government officials may not be held vicariously liable for the conduct of their subordinates." *Atkins v. Sweetwater County Sheriff's Office,* 2012 WL 580575, at * 2 (10th Cir. Feb. 23, 2012) (unpublished opinion) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).    In the due process context, "this means the focus is on the force the *supervisor* used or caused to be used, the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else." *Porro,* 624 F.3d at 1329 (citations omitted).

The Court finds the allegations in the Complaint inadequate to support a claim against Sheriff Lester on this basis.  Accordingly, the motion to dismiss must be granted.

Sheriff Lester also seeks dismissal on the grounds that he is entitled to qualified immunity from individual § 1983 liability.  "Qualified immunity protects government officials performing discretionary functions from individual liability in federal claims unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nielander v. Board of County Comm'rs,* 582 F. 3d 1155, 1166 (10th Cir.  2009) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1204 (10th Cir.2007)0; see also *Pearson v. Callahan*, 555 U.S. 223 (2009).

The correct standard for reviewing a motion to dismiss in a qualified immunity case is the same as for dismissals generally. *Archuleta v. Wagner* 523 F.3d 1278, 1281 (10th Cir. 2008) (citing

*Moya v. Schollenbarger*, 465 F.3d 444, 455 (10th Cir.2006).  Thus, the Court must apply the *Twombly* standards to determine the sufficiency of the allegations.  As the Tenth Circuit has held, to avoid dismissal based on qualified immunity, the "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma,* 519 F.3d 1242, 1249 (10th Cir.2008).

An inmate's right to be free from an Eighth Amendment violation based on deliberate indifference to serious medical needs was clearly established at the time of the incidents alleged in the Complaint.  Thus, dismissal would not be warranted on that basis.  However, the Court has determined that, with respect to the individual § 1983 liability of Sheriff Lester, the Complaint does not allege sufficient facts to show that he personally participated in a violation of Ms. Marez's Eighth Amendment rights.  Thus, the Court must conclude that Sheriff Lester is entitled to qualified immunity from individual liability on the basis of the allegations in the Complaint.

The motion to dismiss the claims asserted against Sheriff Lester in his individual capacity is granted.

State law claims:

In addition to her § 1983 claims, Ms. Gilbreath also seeks to hold the Board and Sheriff Lester liable for negligence.  The Board and Sheriff Lester seek dismissal of these claims, arguing they are immune from liability under the GTCA.

The GTCA,  Okla. Stat. tit. 51 § 151, *et seq.,* provides the exclusive means by which an injured plaintiff may recover tort damages from a governmental entity.  *Fuller v. Odom*, 741 P. 2d 449, 451 (Okla. 1987).  Pursuant to the GTCA, a county may be liable  for  torts committed by its

employees while acting within the scope of their employment. *Salazar v. City of Oklahoma City*, 976 P. 2d 1056, 1066 (Okla. 1999); *DeCorte*, 969 P. 2d at 361 (Okla. 1998) ( citing Okla. Stat. tit. 51 § 153 ).

In this case, the Complaint alleges a GTCA claim against both the Board and Sheriff Lester in his official capacity. Suits against county officials or their appointees are construed under the GTCA as suits against the county. 51 Okla. Stat. tit. 51 § 163(C). To properly sue a county, a plaintiff must name the county's board of county commissioners as a defendant. Okla. Stat. tit. 19 § 4. Where a plaintiff does so, as in this case, it is redundant to also name a county official sued in his official capacity. *See Pellegrino v. State ex rel. Cameron University*, 63 P. 3d 535, 537 (Okla. 2003). "A suit against a governmental officer in his or her 'official capacity' is the same as a suit against the entity that the officer represents, and is an attempt to impose liability upon that entity." *Id., citing McMillian v. Monroe County*, 520 U.S. 781, 785, n.2 (1997).

In this case, Ms. Gilbreath has sued the Board under the GTCA, seeking to hold it liable for the alleged tortious conduct of the Center employees. To the extent that she sues Sheriff Lester in his official capacity for that same conduct, the claim is effectively a claim against the county. Both the Board and Sheriff Lester in his official capacity cannot be liable for the same conduct under the GTCA, and the Board is the proper party defendant on these claims. Accordingly, to the extent the GTCA claims are also asserted against Sheriff Lester in his official capacity, he is entitled to dismissal of those claims.

The Board is liable under the GTCA only for torts committed by its employees while they acted within the scope of their employment. To be within the scope of employment, the actions must have been taken in good faith. Okla. Stat. tit. 51 § 152(9). The GTCA defines "scope of

employment" as "performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud." Okla. Stat. tit. 51 § 152(9).

The Board argues that, if the Center employees acted in the manner alleged by Ms. Gilbreath, they could not have acted in good faith and, as a result, their conduct was outside the scope of their employment.   Where a law enforcement officer abuses his lawful power, the employing agency is immune from liability for the resulting tort because such abuse negates a finding that he acted in good faith. *See, e.g., DeCorte*, 969 P. 2d at 361-62.   Allegations that an officer assaulted and battered a plaintiff are among the type of actions that would fall "outside the scope of the officers' employment, precluding *respondeat superior* liability on the part of the city under §§ 152(9) and 153(A)." *Scheerer v. City of Oklahoma City,* 1997 WL 4276, at *2 (10th Cir. Jan. 7, 1997) (citing *McMullen v. City of Del City*, 920 P.2d 528, 529-31 (Okla. Civ. App.1996)); *Holman ex rel. Holman v. Wheeler*, 677 P.2d 645, 646-48 (Okla.1983); *Houston v. Reich*, 932 F.2d 883, 885, 889-90 (10th Cir.1991).

In this case, the Complaint alleges that  Center employees, detention officers, and deputies inflicted injury upon Ms. Marez by applying unnecessary and excessive force when placing her in detention.   Because this alleged conduct constitutes action that has been determined to be outside the scope of an officer's employment, it cannot form the basis for the Board's liability under the GTCA.  Accordingly, under the facts alleged in the Complaint, the Board cannot be liable for that conduct, and the motion to dismiss is granted as to this claim.

Propriety of granting leave to amend:

18

Having determined that the motion to dismiss must be granted in part, the Court must consider whether Plaintiff should be granted leave to amend in order to correct the noted deficiencies. *Brever v. Rockwell International Corp.*, 40 F. 3d 1119, 1131 (10th Cir. 1994). Plaintiff expressly requests leave to do so. According to the general rule, "'if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Id.* (quoting 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1483, at 587 (2d ed. 1990) and *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993)).

However, leave to amend is not automatically granted, and may be denied for reasons such as futility of amendment or undue delay. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir.1996). A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment. *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997)(citing *AM Int'l, Inc. v. Graphic Management Assocs., Inc.*, 44 F.3d 572, 578 (7th Cir.1995) and *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989)).

In this case, the Court concludes that it would not be futile to allow Plaintiff to amend to attempt to cure the deficiencies noted with respect to her § 1983 claims regarding the purported failure of the Board to properly train the individual defendants. While the legal basis for holding the Board liable on such a claim renders the success of the claim questionable based on the facts on which Plaintiff relies, the Court cannot conclude at this stage of the litigation that Plaintiff is unable to allege facts to state a plausible claim for relief. Accordingly, if Plaintiff has a good faith belief

that there are facts to support a claim for relief based on a failure to train, she may amend her Complaint.

With respect to the § 1983 claims asserted against Sheriff Lester in his individual capacity, Plaintiff is also granted leave to amend to the extent she has a good faith basis for alleging the personal participation required to state a plausible claim for relief.

With respect to the GTCA claims, however, the Court finds that an amendment to these claims would be futile.  The facts as alleged against the individual defendants, if proved, necessarily negate a claim for relief under the GTCA because the alleged conduct would require a determination that those defendants acted outside the scope of their employment.  Accordingly, leave to amend these claims against the Board and Sheriff Lester is denied.

Conclusion:

For the foregoing reasons, the motion to dismiss [Doc. No. 7] is granted in part and denied in part.  Plaintiff is authorized to file an amended complaint for the purpose of curing the deficiencies noted in the § 1983 claim against the Board based on a failure to train. To the extent that she contends a basis exists for asserting that claim against Sheriff Lester, she may also amend the claim.   Plaintiff is also authorized to amend her § 1983 claim against Sheriff Lester in his individual capacity if she has a factual basis for doing so in good faith. Leave to amend is otherwise denied.

Because Plaintiff has agreed to dismissal of the John Doe defendants unless their identities can be ascertained, the amended complaint shall delete them.

Plaintiff shall file her amended complaint no later than 21 days from the date of this Order. The defendants' answers or other responsive pleadings shall be filed according to the deadlines set

forth in the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 6th day of July, 2012.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE